UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

LAWRENCE MANKER, JR. and
STEPHANIE HUNT, as Administrator of
the Estate of Malcolm Carlton Frazier,
deceased and KENDRA FRAZIER, as
child of Malcolm Carlton Frazier,
deceased,

Plaintiffs,

v.          4:12-cv-89

THE ZURICH SERVICES
CORPORATION,

Defendant.

## ORDER

Before the Court is Defendant The Zurich Services Corporation's ("Zurich") Motion for Summary Judgment against Plaintiffs Lawrence Manker, Jr., Stephanie Hunt, as Administrator of the Estate of Malcolm Carlton Frazier, and Kendra Frazier, as child of Malcolm Carlton Frazier, and several motions in limine. ECF Nos. 62-69. For the reasons stated herein, Zurich's Motion for Summary Judgment, ECF No. 65, is *GRANTED*, and the motions in limine, ECF Nos. 62-64; 66-69, are *DISMISSED as MOOT*.[1]

## I. BACKGROUND

This case concerns the tragic events of February 7, 2008, when a large explosion occurred at Imperial Sugar Company's ("Imperial") Port Wentworth, Georgia sugar refinery plant. ECF No. 77 at 5. The explosion destroyed the plant's production capability, caused more than $250,000.00 in physical damage, and killed fourteen people. *Id.* It injured Manker and killed Malcolm Carlton Frazier. *Id.*

Zurich American Insurance Company ("ZAIC"), a Zurich affiliate, was the "insurer underwriter" for Imperial's property insurance policy for its Port Wentworth plant. ECF No. 84 at 2. ZAIC retained Zurich to conduct inspections of the plant. *Id.* Zurich inspected the plant in 2004, 2005, 2006, and 2007 through its employee John Nowiak. *Id.*

The 2008 explosion was caused by stainless steel covers that were placed over a tunnel conveyor belt beneath Silos 1 and 2 in the months before Zurich's last inspection of the plant in April 2007. *Id.* at 3-4. Plaintiffs contend that Zurich's negligence in failing to identify the catastrophic threat of explosion at Imperial's plant caused the injuries to Manker and Malcolm Carlton Frazier. *See* ECF No. 77.

On December 15, 2008, Plaintiffs sued Imperial Sugar Company, Savannah Foods & Industries, Inc., Savannah Molasses & Specialties Company, Imperial-Savannah LP, Imperial Distributing, Inc., Stokes Contracting, Inc., Kerby Enterprises, Inc., the American Institute of Baking, Inc., AIB International, Inc., Savannah Foods Industrial Inc., Savannah Bridge Co., Inc., and Zurich in the State Court of Chatham County, Georgia. *Id.* at 2. On November 16, 2011, Zurich was dismissed without

---

[1] Plaintiffs voluntarily withdrew the designation of several individuals as expert witnesses, thus rendering ECF Nos. 63, 64, 66, and 67 moot. This Order granting Zurich's motion for summary judgment renders ECF Nos. 62, 68, and 69 moot.

prejudice from that action. *Id.* Plaintiffs then filed this case on March 30, 2012. ECF No. 1. Zurich moved for summary judgment on all claims against it. ECF No. 65.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). All evidence and factual inferences, however, must be viewed "in the light most favorable to the non-moving party," and "all reasonable doubts" resolved in his favor. *Id.* Nevertheless, should the moving party meet its initial burden to point out the absence of evidence supporting an essential element on which the non-moving party bears the burden of proof, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. ANALYSIS

In *Huggins v. Aetna Cas. & Sur. Co.*, 245 Ga. 248 (1980)[2], the Supreme Court of Georgia adopted § 324A of the Restatement of Torts (Second) Liability To Third Person For Negligent Performance Of Undertaking, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The property insurance policy issued to Imperial states "[w]e have the right but not the obligation to . . . [m]ake inspections and surveys at any time; . . . [g]ive you reports on the conditions we find; and . . . [r]ecommend changes." ECF No. 65-2 at 172. The policy further states:

> Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health and safety of workers of the public. We do not warrant that conditions . . . [a]re safe or healthful; or . . .

---

[2] "As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case, [Georgia], alongside federal procedural law." *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1983).

2

[c]omply with laws, regulations, codes or standards.

*Id.*

Zurich also issued a Property Policyholder Risk Improvement Report after its inspections bearing the following notice:

> Only you can make your workplace safe. Those duties are not delegated and Zurich Services Corporation accepts no delegation of those duties. Zurich Services Corporation will assist you by providing the specific services for which you have contracted. However, it makes no warranties in conjunctions with those services, and it undertakes no obligation other than set out in the contract.

*Id.* at 236.

Although true that in *Cleveland v. Am. Motorists Ins.*, the court held that a similar policy provision—as well as the fact that the policy covered only property damage—did not alone compel summary judgment in favor of the insurer, that court also cautioned that "[t]his is not to imply that an insurer may never undertake inspections solely for its own benefit and not for the benefit of the employer, employee, or others . . . and, therefore, no reliance was warranted." 163 Ga. App. 748, 751 (1982). The *Cleveland* court held that an insurer covering property loss to a steam generating boiler that exploded, killing the plaintiff's husband, was not entitled to summary judgment on the plaintiff's negligent inspection claim. *Id.* at 752. The facts and circumstances of that case differ substantially from the instant case, however, and *Cleveland* does not compel a denial of Defendant's motion for summary judgment in this case.

At issue in *Cleveland* was the inspection of one boiler, not an entire refinery. After each inspection, that insurer issued a certificate of inspection that was to be placed "in *a conspicuous place* under glass *in the room containing the boiler*." *Id.* at 749 (emphasis added). That a certificate of inspection so prominently placed inside the boiler room created a genuine dispute as to whether employees relied on those inspections for safety purposes seems obvious.

By contrast, no similar evidence exists here of any such certificate displayed anywhere at Imperial's plant. Moreover, although there was some evidence that the employer in *Cleveland* conducted its own safety program, there was no evidence that before the boiler exploded, it was ever aware of any unsafe conditions or impending calamity. The record evidence here shows that Imperial was very aware of the condition that caused the explosion (stainless covers over conveyor belts), and that those covers were a serious explosion hazard (Imperial's actual knowledge of the danger is discussed more *infra*).

That an entity conducting an inspection may do so for reasons other than the physical well-being of others—and that such a finding may be appropriately made as a matter of law—is demonstrated by *Davenport v. Cummins Ala., Inc.*, 284 Ga. App. 666 (2007), where a wood chipper engine exploded and severely injured the worker operating it. The *Davenport* court affirmed a grant of summary judgment *in*

3

favor of the company that conducted a performance inspection of the engine and included in its review document a similar disclaimer to the one included by Zurich stating that the review was not a safety inspection. *Id.* at 669, 673. The *Davenport* court held that such evidence showed that the inspection involved engine performance only, and that the inspecting company undertook no duty to perform a safety inspection. *Id.* at 673 (stressing that "Section 324A of the Restatement will not support a cause of action based on the theory that a party who did not undertake to render services *should have done so*").

Similarly, in *GuideOne Mut. Ins. Co. v. Hunter*, 286 Ga. App. 852 (2007), the court held that summary judgment in favor of the insurer was proper on a negligent inspection claim. In *GuideOne*, the claims adjuster for the homeowner's insurer inspected roof and water damage to the home to determine damages and cost of repairs. *Id.* at 852-54. The plaintiffs later sued the insurer for personal injuries caused by mold, arguing that the insurer was negligent in failing to inspect for mold, warn of mold dangers, and recommend appropriate remediation. *Id.*

The *GuideOne* court reversed the trial court's denial of the insurer's motion for summary judgment because the insurer's inspections were for the limited purpose of determining damages and cost of repairs, and

> [a]lthough [the insured] testified that he was relying on [the insurer and its inspector] to advise him on the necessary extent of repairs, the . . . insurance policy did not impose such a duty on [the insurer] and there is no evidence that [the insured] informed [the insurer or its inspector] of his expectation in that regard. Nor did [the insurer] undertake such a duty . . .
> . . Nor is there any evidence that [the inspector], through any action on his part, assumed such a duty or undertook to render that service.

*Id.* at 855.

Here, like in *Davenport* and *GuideOne*, the evidence viewed in the light most favorable to Plaintiffs simply does not show that their injuries were caused by reliance on any duty of Zurich to conduct safety inspections. Zurich and its affiliates explicitly informed Imperial that Zurich's inspections were for underwriting purposes only and that Zurich did not and would not conduct safety inspections. *See* ECF No. 65-2 at 172, 236. Here, as in *GuideOne*, although a manager testified that he relied on Zurich's inspections for safety purposes, the insurance policy imposed no such duty—in fact, it explicitly disclaimed any such duty—and there is no evidence in the record that Imperial informed Zurich of such expectations. Because Zurich did not undertake to render safety inspections, Plaintiffs' negligent inspection claim cannot be based on the theory that Zurich should have conducted safety inspections. *See Davenport*, 284 Ga. App. at 673.

It also bears noting that each and every Georgia case that the Court has located imposing liability for negligent inspection in the insurance context involved a defendant that was the insurance company that issued the policy, but that is not the case here.

4

Zurich is a separate entity that performed inspections for the insurer's underwriter, not Imperial, for underwriting purposes. This is not a case where the defendant is the insurance company that contracted with the employer, and, in the process, conducted inspections that may or may not have been for the benefit of the employer as well as the insurer.

Perhaps most detrimental to Plaintiffs' claims against Zurich, however, is the record evidence showing that Imperial had actual knowledge of the condition that caused the explosion (stainless covers over conveyor belts), and that those covers were a serious explosion hazard, *after* the alleged negligent 2007 inspection of Zurich, but before the 2008 explosion occurred. On January 20, 2008, Darren Pevey, the plant safety manager, emailed the plant manager and safety director, warning:

> *We have serious dust, explosion hazards* on the 9th floor silo. In some places sugar is piled up under the steel belt with nowhere to go *because of the stainless covers over the belt. . . .* I know the stainless covers are a quality thing *but they are also allowing sugar to get from underneath the belt and piling up into bearings and other metal components.*
>
> *We have a serious issue here we need to address.*

ECF No. 65-2 at 470 (emphasis added).

Graham Graham, Imperial's Vice President of Operations also inspected the plant on several occasions in late 2007 and early 2008, prompting him to warn Imperial's CEO that the plant's safety deficiencies were alarming. *Id.* 410-12, 468-69. Graham also recalled the CEO saying, "I am surprised we haven't killed anyone at this facility. It's -- in my opinion, it's so dangerous." *Id.* at 412.

Plaintiffs cannot argue that although Imperial had actual knowledge of the imminent danger caused to human life by the steel covers in one silo, it was not also aware of the same threat caused by the same covers it had installed in another silo. To so hold would be an unreasonable inference, not a reasonable one. *See Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985) (stressing that at summary judgment stage, "[a]ll *reasonable* inferences" should be made in favor of the nonmovant, not unreasonable inferences).

The record evidence shows that Imperial did not simply rely on Defendant's inspections and remain in the dark as to the serious explosive hazard created by the stainless covers over the belts; rather, Imperial conducted its own safety inspections and assessments, identified the unsafe condition that caused the explosion, and attempted—unsuccessfully—to address the danger. In light of Imperial's actual knowledge of the imminent danger to life caused by the stainless covers over the belts, Defendant cannot be liable for Plaintiffs' injuries. *Compare Argonaut Ins. Co. v. Clark*, 154 Ga. App. 183, 187 (1980) (noting that when an employer has its own safety program, "an insurer does not owe an employee a legal duty to warn him or his employer of conditions which he and his employer had a greater opportunity to

5

discover"), *with Universal Underwriters v. Smith*, 253 Ga. 588 (1984) (noting that liability based on negligent safety inspections typically rests on a "continuation of business as usual in the belief that any necessary precautions would be taken or called to the user's attention"). Any argument that had Imperial learned of the danger of the covers sooner from Defendant, it would have removed them before the explosion occurred is no more than bald speculation that cannot help Plaintiffs to survive summary judgment.

### III. CONCLUSION

The record evidence shows that Zurich's inspections were limited to underwriting purposes for the property insurance policy. Plaintiffs cannot show that their injuries were caused by reliance on any duty of Zurich to perform safety inspections. Accordingly, Zurich's Motion for Summary Judgment, ECF No. 65, is **GRANTED**. The motions in limine, ECF Nos. 62-64; 66-69, are **DISMISSED as MOOT**.

This __1__ day of August 2013.

/s/ B. Avant Edenfield
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA